United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAUL GARIBAY,                          ) No. C 03-1808 CW (PR)
                                       )
              Petitioner,              ) ORDER DENYING PETITION FOR A
                                       ) WRIT OF HABEAS CORPUS
         v.                            )
                                       )
GAIL LEWIS, Warden,                    )
                                       )
              Respondent.              )
_____            )

INTRODUCTION

    Petitioner Raul Garibay, a state prisoner incarcerated at
Pleasant Valley State Prison, filed this pro se petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a
conviction and sentence imposed by the Santa Clara County Superior
Court.

    On January 19, 2006, the Court ordered Respondent to show
cause why the petition should not be granted.  Respondent has filed
an answer to the petition and a memorandum of points and
authorities and exhibits in support thereof.  Petitioner has filed
a traverse to the answer and exhibits in support thereof.

    Having considered all of the papers filed by the parties, the
Court DENIES the petition on all claims.

PROCEDURAL HISTORY

    On September 20, 2000, a jury found Petitioner guilty of rape,
inflicting corporal punishment on a cohabitant, forcible sodomy,
assault with a deadly weapon, assault by means of force likely to
produce great bodily injury, felony false imprisonment and
exhibiting a deadly weapon.  On November 3, 2000, Petitioner was
sentenced to a total of sixteen years in prison.

The California Court of Appeal affirmed the judgment in a written opinion on September 5, 2002.  Petitioner sought timely review of the appellate court's decision.  The California Supreme Court denied review on November 15, 2002.

On April 23, 2003, Petitioner timely filed the instant federal habeas corpus petition in this Court.  In an Order dated December 31, 2003, the Court determined that the petition contained at least three unexhausted claims.  The Court dismissed the petition with leave to amend.

On January 14, 2004, Petitioner filed a motion to stay the petition while he exhausted his claims in state court.  In an Order dated May 6, 2004, Petitioner's motion to stay was denied, and he was ordered to file an amended petition and a renewed request for stay within thirty days.  Petitioner filed an amended petition on June 4, 2004 containing only exhausted claims.  He also renewed his request for the Court to stay the petition.

On May 2, 2005, Petitioner informed the Court that the California Supreme Court had denied his state habeas petition; therefore, he filed his second amended petition containing his newly-exhausted claims.

On August 25, 2005, Petitioner filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  On January 19, 2006, Petitioner's motion for relief from judgment was granted and an Order to Show Cause was issued.

                          STATEMENT OF FACTS

The California Court of Appeal summarized the factual background as follows:

> In July 1998, Christina met appellant.  A few months later she began living with him.  In February 2000, they were living in a converted garage apartment located

2

behind appellant's mother's house in San Jose.  The
relationship was marked by appellant's fits of jealousy.

On the weekend of February 5 and 6, 2000, what started
out with Christina shoving appellant, ended with her
being punched in the back and in the head, then raped
and sodomized.  Appellant shot her with a blowgun and
threatened her with a knife.  He twisted her neck, which
had been injured previously by a former abusive
boyfriend, Eddie, and prevented her from leaving the
apartment several times.

When Christina persuaded appellant to take her to the
hospital for her neck injury, she told the nurse that
her black eye and other injuries had sustained in a
car wreck.  However, she soon changed her story and told
the hospital staff and the police that appellant had
sexually and physically assaulted her.  A few days
later, at the request of the police and in their
presence, Christina placed a pretext telephone call to
appellant wherein he made several incriminating
statements.

In March 2000, Christina began to recant.  She continued
to assert that appellant had physically abused her, but
claimed at the preliminary hearing that the sexual acts
were consensual.

People v. Garibay, H022283, 2 (Sept. 5, 2002) (Opinion) (footnotes
in original).

Before trial, the prosecutor filed a motion to admit evidence

of uncharged physical and sex assaults Petitioner committed against

Kathy, a former cohabitant and mother of his three children.[1]  Id.

at 2.  Upon finding that the probative value of the evidence was

"very great," the trial court decided to allow testimony from Kathy

and their son, Jeremy.  Id. at 3.

The jury was selected and sworn on September 5, 2000.  Id.

The prosecution called Christina as their first witness.  Id.

While she continued to assert that appellant physically abused her,

she claimed that the sex acts were consensual.  Id.

_____

[1] The facts regarding the admission of Petitioner's uncharged bad
acts are discussed in detail below.  See infra Discussion Part I.A.1.

3

The appellate court outlines the trial testimony of the other witnesses as follows:

> Anita Ruiz-Contreras, a nurse with the Sexual Assault Response Team (SART) and the Violence Intervention Program (VIP) saw Christina on the afternoon of February 6, 2000.  Christina told Ruiz-Contreras that appellant had physically and emotionally abused her for nine months and had sexually assaulted her once nine months earlier.  Christina consented to have her injuries photographed.  Ruiz-Contreras documented her injuries and complaints of pain.  At this time, Christina had a black eye, pain around her left thumb, a red mark on her neck, bruises on her right upper arm, a quarter-sized abrasion on her elbow, neck pain, a bruise on her coccyx, and a dime-sized abrasion and a half-dollar sized abrasion on her left wrist.

> Christina told her that appellant had choked her and finally admitted that he had sexually assaulted her.

> San Jose Police Officer Brian Anderson, accompanied by Officer Marenom, spoke with Christina at Valley Medical Center.  He observed many of Christina's injuries and heard her complaints of pain.  She was visibly upset and shaking during the interview.

> Christina told Anderson that the incident started around 9:00 a.m. on February 5, when appellant accused her of sexually gratifying herself.  He punched her in the head and in the back causing her pain.  Appellant pulled off her clothes, raped her, turned her over and then sodomized her for eight to ten minutes.  After using the bathroom, Christina tried to leave.  Appellant grabbed her by the hair and threw her on the bed.  Christina curled up in a ball and huddled in the corner of the bed because she feared that appellant would continue to beat her.  Eventually, appellant calmed down and around 2:00 p.m. went to get her some aspirin from the main house.

> When he returned to the apartment he started yelling at her again and accused her of trying to leave.  He grabbed her by both arms and threw her on the bed.  Appellant hit her in the back five to eight times.  He pointed a five-inch steak knife in her face and stated he could kill her.

> When they awoke the next morning Christina told appellant she wanted to leave.  Appellant told her he was going to kill her.  He grabbed her neck with one hand and forced her head so far back with his other hand that she thought her neck was breaking.  After Christina screamed for him to stop, he grabbed a blowgun.

4

Christina was shot on her left foot and on the back of her left thigh with the blowgun. Appellant then removed the blow darts from her body. He grabbed her by the hair and threw her on the bed. Fearing for her life, Christina had sex with appellant, and then threw up in the bathroom.

Later that day, appellant calmed down and Christina convinced him that she needed to go to the hospital for her neck. They went to the hospital around 2:30 p.m. on Sunday. From 9 a.m. on Saturday until 2:30 p.m. on Sunday, when they went to the hospital, appellant would not let Christina leave the apartment.

After Officer Anderson had interviewed Christina he took her to SART and waited for her.

Patricia Crane, an expert in the area of examining patients for evidence of possible sexual assault and other physical trauma, documented Christina's injuries and her account of the sexual and physical assaults appellant perpetrated on her. Christina's account to Crane was similar in detail to that which she had given Officer Anderson. Crane also noted that Christina had an anal laceration.

Detective Sean Pritchard of the Sexual Assault Unit, accompanied by Officer Christina Thompson, interviewed Christina on the morning of February 7, 2000. At that time, Christina's injuries were very visible and she reiterated that she had been beaten, raped and sodomized.

Pritchard talked to Christina about making a pretext phone call to appellant. Although she was nervous, she cooperated with the officer and called appellant. During the ensuing call appellant made incriminating statements.

Opinion at 6-8.

A tape of the phone call was played for the jury during Christina's testimony.[2]  RT 187.

During the call, Christina told Petitioner she still felt like "clay-do thrown up against the wall." CT 210.  She asked Petitioner why he had done it and told him that she hurt all over.  CT 210.

_____

[2] Christina testified that Detective Pritchard "steam rolled" her into making the pretext phone call to Petitioner.  RT 179.

United States District Court
For the Northern District of California

Petitioner said he was sorry.  CT 210.  She told him that she had a black eye from him hitting her in the face.  CT 213.  She also mentioned that he kicked her with a certain pair of boots.  CT 213.  He said that he was wearing a different pair of boots.  CT 213.  She asked him why he threatened her with a knife, and he said that he did not want her to leave him.  CT 214.  She also asked him why he used a "wad of Vaseline" and sodomized her while she begged him to stop.  CT 215.  He answered that he "didn't know what got into [him]."  CT 215.  When she reminded him that he told her he would have shot her if the blow gun had been a real gun, he agreed.  CT 215.

> Following the pretext phone call, Christina called Pritchard about five times just to check in with him. On March 16, at about 4:00 p.m. Christina called Pritchard and said that she wanted to recant her entire statement.  She told Pritchard that she did not want appellant to go to jail for the rest of his life.  When Pritchard confronted her with the injuries she had sustained, she admitted her statement about the physical assault was true.  He told her that he would take her new statement and that if she changed her mind again she should contact him.

> On February 10, 2000, Pritchard interviewed appellant after he waived his Miranda rights.  Appellant said that Christina had called him to tell him that the police were coming for him because of what he had done to her. Appellant denied that he had beaten Christina and said that the sex was consensual.  When asked why Christina would have made the claims she had made, appellant said that it was because she was angry with him.

> Diana Cunningham, the Victim Witness Coordinator for the district attorney's office, spoke with Christina on March 9, 2000.  Christina told Cunningham she changed her story because appellant needed counseling, not jail or prison.  Initially, Christina denied appellant sexually assaulted her before the weekend of February 5, but eventually she admitted he had.

> . . . .

> On September 20, 2000, the jury found appellant guilty as charged in all seven counts and also found true the

special allegation.  He was sentenced to 16 years in
state prison.

Opinion at 8-9.

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act
(AEDPA), a federal writ of habeas corpus may not be granted with
respect to any claim that was adjudicated on the merits in state
court unless the state court's adjudication of the claims:
"(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite
to that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme] Court
has on a set of materially indistinguishable facts."  William v.
Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable
application' clause, a federal habeas court may grant the writ if
the state court identifies the correct governing legal principle
from the [the Supreme] Court's decision but unreasonably applies
that principle to the facts of the prisoner's case."  Id. at 413.
The only definitive source of clearly established federal law under
28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of
the time of the relevant state court decision.  Id. at 412.

In determining whether the state court's decision is contrary

to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. Lajoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). It also looks to any lower court decision examined or adopted by the highest state court to address the merits. See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

                              DISCUSSION

Petitioner raises six claims for relief, all of which have

been exhausted for the purpose of federal habeas corpus review. The following claims were raised on direct appeal and denied by the California Court of Appeal in a reasoned decision:  that prior acts of sexual assault and domestic violence were improperly admitted into evidence; that the trial court erred in instructing the jury that Petitioner could be found guilty based on propensity evidence alone using California Jury Instructions Criminal (CALJIC) Nos. 2.50.01 and 2.50.02; and that the trial court erred in instructing the jury with CALJIC No. 17.41.1.  The remaining three claims were raised in Petitioner's state habeas petition and were denied summarily:  insufficiency of evidence to support the conviction; prosecutorial misconduct; and ineffective assistance of trial counsel.  The Court now addresses the merits of his claims.

I.   CLAIMS DENIED IN REASONED STATE COURT DECISION

    A.   ADMISSION OF PRIOR UNCHARGED ACTS OF SEXUAL ASSAULT AND DOMESTIC VIOLENCE

        1.  Background

The California Court of Appeal set forth the factual and procedural background regarding the admission of Petitioner's prior uncharged acts of sexual assault and domestic violence as follows:

> Before trial, pursuant to Evidence Code sections 1108 and 1109, the prosecution filed a motion to admit evidence of uncharged physical and sex assaults appellant committed against Kathy, a former cohabitant and mother of three of his children.  The prosecutor wrote that three days after the preliminary hearing in this case, a second victim [Kathy] reported to the police that between February 1995 and April 1999, appellant raped her approximately 20 times.  During 10 of these incidents appellant also sodomized her against her will.  Also, Kathy reported that some of these incidents occurred in front of their children and that she was physically assaulted approximately 15 times. Further, her bottom teeth were permanently damaged from the assaults.

United States District Court
For the Northern District of California

When the motion was heard on August 31, the prosecutor discussed the similarities between the assault appellant committed against Christina and those he committed against Kathy.  He argued that there was a similar motive in each case, namely irrational jealousy. Further, he argued there was no risk of collaboration between the victims because there was bad blood between them.  Moreover, by coming to court Kathy was exposing herself to penalties because there was a child custody hearing and an issue of welfare fraud that appellant might raise during the trial.  The prosecutor advised Kathy that he would have to report the possibility of fraud to the welfare department.

On the same day as one of his motions in limine, appellant moved, pursuant to Evidence Code[3] section 352, to exclude the evidence that would be provided by Kathy and their son Jeremy.

After hearing argument from both sides, the court weighed several factors including the consumption of time, the risk of confusing the jury, and the prejudicial impact of the testimony.  The court decided to allow Kathy and Jeremy to testify pursuant to sections 1108 and 1109, but directed the District Attorney to limit the details and number of incidents. The court noted that while the prejudicial value of the evidence was high, the probative value of the evidence was "very great."

On September 5, 2000, the jury was selected and sworn.

Christina was called as the prosecution's first witness. She continued to assert that appellant physically abused her, but claimed that the sex acts were consensual.

Nine-year old Jeremy, Kathy and appellant's oldest son, testified that when they lived in the garage he saw appellant hit Kathy on the chest more than once and that Kathy cried when this happened.  Appellant and Kathy argued.  Sometimes he would see appellant get on Kathy to have sex.  He knew that she did not like this because she would say "ow, all the time."  On one occasion he saw appellant hit Kathy in the mouth causing her teeth to become crooked.

On September 7, 2000, a hearing was held outside the presence of the jury to determine how Kathy would respond when asked whether she had ever committed welfare fraud.  Before she took the stand, defense

---

[3] Unless otherwise indicated statutory references herein are to the Evidence Code.

**United States District Court**
For the Northern District of California

counsel renewed his motion to exclude her testimony on 352 grounds.  The court again considered the 352 objection observing that no evidence had been presented that would change the previous ruling.  Once again, the court found that the probative value of the evidence was not outweighed by the time considerations, the prejudice, and confusion of the issues.  The court determined that it would allow the testimony subject to a section 402 hearing.

Called as a witness at the hearing, Kathy, on the advice of her attorney, invoked her Fifth Amendment right when asked whether she had committed welfare fraud and when asked about forms she filled out while she was on welfare.  After defense counsel had questioned Kathy and made his argument, the trial court sustained Kathy's exercise of the privilege.

Defense counsel renewed a previous objection that Kathy should not be allowed to testify.  He argued that Kathy would be allowed to say damaging and inflammatory things about appellant, but he would not be able to . . . cross examine her about the alleged welfare fraud.  The prosecutor then proffered the following stipulation: "Katherine [Kathy] told the Prosecutor, George Chadwick, in a private conversation that one, she and the [appellant], Raul Garibay, are involved in a custody court case.  [¶]  "Two, she expected Mr. Garibay to raise the issue of the welfare fraud in that custody case; and three, that while living with Mr. Garibay she believes she violated welfare fraud laws."[2]

---

[2] When the court asked whether the stipulation was acceptable to the defense, defense counsel said, "I am completely thankful and appreciate the District Attorney offering the stipulation.  If the Court is going to rule against me and against my request that she not be allowed to testify at all because of the Fifth Amendment issue that I've raised, if the Court is going to allow that she can testify on direct, but I will allow her to assert her Fifth Amendment privilege and if I am left with the choice of nothing or a stipulation I will accept the stipulation. . . .  [¶]  By virtue of the District Attorney's stipulation, I guess clearly that stipulation will allow me to argue the credibility issue.  But the problem I have with it is that it will not get at the heart of her testimony.  It will not -- because remember, Judge, it's not just about the testimony but as 780 it's demeanor, attitude towards the proceeding, towards me and yes, all of that will be lost.  [¶]  A stipulation is an innocuous form or arguably a watered-down form of what could be done effectively done on cross. . . .  [I]f my only choice is I don't get to ask her anything about it because of the difficulty or accept the stipulation, that's my last choice, I will accept the District Attorney's stipulation, but want the Court to know that it is not my first choice."

11

On September 11, 2000, outside the presence of the jury, the trial court said both counsel had been instructed not to ask Kathy any questions that would elicit the exercise of her privilege against self-incrimination. Before Kathy's testimony defense counsel again renewed his objection to her testimony.  The court then gave a limiting instruction.[3]

Kathy testified that she had an eight-year relationship with appellant.  During this time appellant had raped[4] her on several different occasions and forced her to have anal sex on at least five occasions.  Appellant also punched her in the face, dislodging four of her teeth, and hit her in the chest on one or two occasions causing her pain.  On the advice of counsel Kathy invoked her Fifth Amendment privilege with regard to any questions regarding her committing welfare fraud.

. . . .

Ruben Salazar, the custodian of records for the Santa Clara County Department of Social Services, testified that applications, including those submitted by Kathy, were signed under penalty of perjury and witnessed by an eligibility worker.  Department of Social Services

---

[3] The following limiting instruction was read to the jury:
"Thank you.  Ladies and gentlemen.  Evidence may be introduced through the testimony of this witness for the purpose of showing that the defendant engaged in a sexual offense or other conduct such as domestic violence on one or more occasions other than that are charged in this case.  If you find that the defendant committed a prior sexual offense or prior sexual violence, you may but you are not required to infer that the defendant had a disposition to commit sexual offenses or domestic violence.
"If you find that the defendant had this disposition, you may but you are not required to infer that he is likely to commit or did commit the offenses for which he's charged in this case.  However, if you find that the defendant committed the prior sexual offenses or prior domestic violence, it is not sufficient by itself to prove beyond a reasonable doubt that he committed the crimes charged in this case.
"The weight and significance of the evidence, if any, are for you to decide.  For the limited purpose for which you may consider this evidence, you must weigh it the same way or in the same manner as you do all other evidence in the case, unless your [sic] otherwise instructed, you are not to consider this evidence for any other purpose."

[4] Kathy testified that there were other occasions when she was not really in the mood and did not want to have sex, but agreed to do so.  However, she was not referring to those instances when she told police that appellant raped her.

12

**United States District Court**
For the Northern District of California

records indicated that Kathy filled out her first
application on June 4, 1992.  Her most recent
application was made on August 27, 1998.  In all but one
of the forms she had filled out, she claimed that
appellant was the father of the oldest and youngest of
her children and that he was an absent parent.  Salazar
had no idea if Kathy had committed welfare fraud, but he
did acknowledge that appellant signed some of the
application forms during the time period that Kathy
reported his whereabouts were unknown.

At the conclusion of Salazar's testimony, the trial
court instructed the jury that the evidence introduced
through Mr. Salazar was permitted to show the activities
and conduct of Kathy.  The evidence was admitted for the
limited purpose of determining her credibility.

Opinion at 2-6, 8-9 (footnotes and brackets in original).

Petitioner claims that the admission of his prior uncharged
acts of sexual assault and domestic violence under California
Evidence Code §§ 1108 and 1109 violated his right to due process.
He also contends that the trial court abused its discretion by
admitting such evidence, which he argues should have been excluded
under California Evidence Code § 352.  Finally, Petitioner claims
that the restrictions on his cross-examination of Kathy violated
his rights under the Confrontation Clause of the Sixth Amendment.

California Evidence Code § 352 provides as follows:  "The
court in its discretion may exclude evidence if its probative value
is substantially outweighed by the probability that its admission
will (a) necessitate undue consumption of time or (b) create
substantial danger of undue prejudice, of confusing the issues, or
of misleading the jury."  Cal. Evid. Code § 352.

California Evidence Code § 1101, provides as follows:

(a) Except as provided in this section and in Sections
1102, 1103, 1108, and 1109, evidence of a person's
character or a trait of his or her character (whether in
the form of an opinion, evidence of reputation, or
evidence of specific instances of his or her conduct) is

13

inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.

Cal. Evid. Code § 1101.

California Evidence Code § 1108 provides, in relevant part, that "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Cal. Evid. Code § 1108.

California Evidence Code § 1109 is nearly identical to section 1108, except that it permits the admission of evidence of the defendant's offenses involving domestic violence, subject to a balancing test of the evidence's probative value against its prejudicial effect, in accordance with section 352. Cal. Evid. Code § 1109(a)(1).

## 2.   Applicable Federal Law

### a.   Due Process Clause

Erroneous state evidentiary rulings are not cognizable in federal habeas corpus proceedings unless the admission of evidence violated the petitioner's rights under the Constitution. <u>Estelle</u>

v. McGuire, 502 U.S. 62, 67 (1991).  The Due Process Clause of the Fourteenth Amendment provides the framework for evaluating claims based on alleged constitutional error in state court evidentiary rulings.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  Permitting a jury to hear evidence of prior crimes or bad acts may violate due process.  See Marshall v. Lonberger, 459 U.S. 422, 438-39 n.6 (1983); Fritchie v. McCarthy, 664 F.2d 208, 212 (9th Cir. 1981) (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).  But a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986).

The admission of other crimes evidence violates due process where there are no permissible inferences the jury can draw from the evidence (in other words, no inference other than conduct in conformity therewith).  See McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir. 1993); Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  The relevance of the evidence of other bad acts to motive or intent, the opportunity for the jury to weigh the credibility of the witness's account of the other bad acts, and the trial court's use of a cautionary instruction to limit the jury's consideration of the other bad acts all are factors a federal court may consider to determine whether a due process violation occurred.  See Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999) (admission of similar prior bad acts to show motive and intent, coupled with limiting

15

United States District Court
For the Northern District of California

instructions, was appropriate); <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir. 1990) (admission of uncharged crimes did not violate due process where trial court gave limiting instruction to jury, jury was able to weigh witness's credibility and evidence was relevant to defendant's intent); <u>Butcher v. Marquez</u>, 758 F.2d 373, 378 (9th Cir. 1985) (admission of uncharged offenses does not violate constitutional rights where jury had opportunity to weigh credibility of complaining witness and judge admonished jury to consider incident only as evidence of intent, not as evidence of bad character).   Juries are presumed to follow a trial court's limiting instructions with respect to the purposes for which evidence is admitted.  <u>Aquilar v. Alexander</u>, 125 F.3d 815, 820 (9th Cir. 1997).

    b.   Confrontation Clause

    The Confrontation Clause of the Sixth Amendment guarantees the right of a defendant in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI.  The right to confront is more than the right to be physically present. Instead, "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)).   To prevail on a claim of a violation of this right, a petitioner must establish that the state courts denied his rights under the Confrontation Clause by erroneously interpreting Supreme Court precedents or unreasonably applying the precedents to the facts in his case.  <u>See</u> 28 U.S.C. § 2254(d).

3.  Analysis

    a.  Due Process Violation

        1)  Constitutionality of Sections 1108 and 1109

Petitioner first claims that California Evidence Code §§ 1108 and 1109 are unconstitutional because they authorize the admission of evidence of prior uncharged acts of sexual assault and domestic violence solely to prove propensity.

The California Court of Appeal rejected Petitioner's challenge to sections 1108 and 1109 by citing to the California Supreme Court's decision in People v. Falsetta, 21 Cal. 4th 903 (1999):

> "In People v. Falsetta (1999) 21 Cal.4th 903 . . . (Falsetta), our Supreme Court addressed the constitutionality of section 1108 . . . and upheld that provision against due process challenge.  [Citation.]" (People v. Jennings (2000) 81 Cal.App.4th 1301, 1310.) Although the Supreme Court has not addressed the constitutionality of section 1109, the Courts of Appeal have regularly applied the reasoning of the Falsetta decision in upholding the constitutionality of section 1109 against similar due process challenges.  (See e.g., People v. Johnson (2000) 77 Cal.App.4th 410, 416-420, review den. Apr. 12, 2000; People v. Hoover (2000) 77 Cal.App.4th 1020, 1026-1029, review den. Apr. 26, 2000; People v. Brown (2000) 77 Cal.App.4th 1324, 1331-1334, review den. May 10, 2000; People v. Jennings, supra, 81 Cal.App.4th at p. 1310; People v. Escobar (2000) 82 Cal.App.4th 1085, 1095, review den. Oct. 25, 2000.)  We agree with the reasoning in these cases and need not repeat the discussion here.  "In short, the constitutionality of section 1109 under the due process clauses of the federal and state [C]onstitutions has now been settled."  (People v. Jennings, supra, 81 Cal.App.4th at p. 1310.)  Consequently, we reject appellant's constitutional challenge to sections 1108 and 1109.

Opinion at 10.

While no federal court has specifically ruled on the constitutionality of sections 1108 and 1109, several circuit courts have upheld the use of propensity evidence under Rules 413 and 414

United States District Court
For the Northern District of California

of the Federal Rules of Evidence.[5]  <u>See, e.g.</u>, <u>United States v. Castillo</u>, 140 F.3d 874, 881 (10th Cir. 1998); <u>United States v. Mound</u>, 149 F.3d 799, 801 (8th Cir. 1998).

The Ninth Circuit has upheld the constitutionality of Rule 414, permitting admission of evidence of similar crimes in child molestation cases.  <u>See</u> <u>United States v. LeMay</u>, 260 F.3d 1018, 1024-25 (9th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1166 (2002).  The court held in <u>LeMay</u> that Rule 414 is not unconstitutional because it is limited in its function by Rule 403.  <u>Id.</u> at 1026-27.  Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative.  <u>Id.</u> at 1027.  The court reasoned that this balancing process eliminates any due process concerns from Rule 414, stating: "As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."  <u>Id.</u> at 1026.

The reasoning of <u>LeMay</u> applies equally to this case because the California rules are analogous to the federal rules.  Evidence that is admissible under sections 1108 and 1109 is limited by section 352.  <u>See</u> Cal. Evid. Code §§ 1108(a), 1109(a)(1).  Section 352 parallels Rule 403 of the Federal Rules of Evidence because it

---

[5] The California Supreme Court noted that section 1108 was adopted after Rule 413 of the Federal Rules of Evidence and was modeled on it. <u>See</u> <u>Falsetta</u>, 21 Cal. 4th at 912.  Rule 413 provides in pertinent part: "(a) In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 413(a).

18

**United States District Court**
For the Northern District of California

permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. <u>See</u> Cal. Evid. Code § 352. As the California Supreme Court held in <u>Falsetta</u>, the requirement under section 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under section 1108 will not infringe on the right to a fair trial guaranteed under the Due Process Clause. 21 Cal. 4th at 913.

Finally, the United States Supreme Court has never held that the admission of evidence of prior crimes violates the right to due process. <u>See</u> <u>Estelle</u>, 502 U.S. at 75 & n.5 (declining to rule on the constitutionality of propensity evidence); <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864-67 (9th Cir. 2006). Because habeas relief may not be granted unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, <u>see</u> 28 U.S.C. § 2254, and there is no Supreme Court precedent that admission of propensity evidence violates due process, the decision of the appellate court cannot be said to have contradicted or unreasonably applied clearly established federal law in upholding the constitutionality of sections 1108 and 1109. <u>See</u> <u>Alberni</u>, 458 F.3d at 866-67 (under AEDPA, habeas relief cannot be granted on claim Supreme Court has reserved); <u>id.</u> at 874-75 (although habeas relief may still be available after AEDPA on reserved issues, as to propensity evidence there is insufficient Supreme Court authority of any kind to clearly establish a due process right not to have such evidence admitted) (McKeown, J., concurring in part and dissenting in part).

2)   Improper Character Evidence

Petitioner also claims that the testimony of Kathy and Jeremy should not have been admitted because it was prejudicial under section 352.  Specifically, Petitioner argues that this evidence was unduly consumptive of time, and the conduct did not result in a conviction, was too remote in time, and its probative value was outweighed by its prejudicial effect.

On appeal, the California Court of Appeal rejected Petitioner's claim.  The appellate court stated:

> Here, the trial court understood its duty under section 352 and expressly found that although Kathy and Jeremy's evidence was prejudicial, the likelihood of confusing the jury was present and the consumption of time was greater, the probative value was "very great." Further, the trial court went on:  "The analysis that Section 352 requires, I think, is supplemented by the Falsetta case.  It asks the Court to also examine factors I think all of which you've discussed and argued about during your arguments.  [¶]  The similarities, the prejudicial impact, the likelihood of confusing and misleading and distracting.  The degree of certainty with respect to the alleged 1108 evidence, its nature, relevance, possible remoteness of the 1108 evidence. [¶]  On balance, and weighing all the factors the Court must do, I'm going to allow the District Attorney to use the 1108 and 1109 evidence as he suggested, again limited in detail so that it is not inflammatory as he consented to and limited in number generally so that we do not have to look at every single event and detail."

Opinion at 12.

The appellate court affirmed the trial court's decision upon finding that Kathy and Jeremy's testimony was properly admitted because the trial court weighed the evidence and determined that its probative value was high even though it was prejudicial:

> . . . [T]he trial court had specifically considered the consumption of time and implicitly found it not to be a determinative factor in admitting the evidence. Further, there could be no confusion here as to why none of these acts resulted in a conviction.  Kathy testified

20

that she had not told anyone about these acts before.
While Kathy's eight-year relationship with appellant had
been over for two years, there is no support for
appellant's contention that one of the acts of physical
violence described by Kathy, having her teeth injured,
was remote because it happened early in their
relationship.

The trial court notes that the evidence would be
prejudicial, but determined that the inflammatory and
prejudicial nature of the evidence would be countered by
limiting the number and details regarding the prior
offenses.  A review of the record reveals that the
prosecutor strictly adhered to this limitation when
presenting Kathy and Jeremy's evidence.  As we noted
above, the prejudice referred to in section 352 applies
to evidence which uniquely tends to evoke an emotional
bias against the defendant as an individual and which
has very little effect on the issues.  Here the pattern
of abuse suffered by Kathy and witnessed by Jeremy was
remarkably similar to that which Christina has suffered.

Finally, appellant argues that the testimony was
prejudicial because it led to exposing appellant to the
jurors as having committed acts of welfare fraud, which
reflected on his honestly and could have been used to
"resolve against him the issue of the credibility of
[his] denial" to the police that he committed crimes
against Christina.  We agree with respondent that this
seems inconsistent with appellant's claims that he was
not able to show that Kathy committed welfare fraud.
Further, it was never established that appellant
committed welfare fraud or was being investigated for
this offense.  We fail to see how appellant was
prejudiced in light of the charge to the jury that the
evidence introduced through Mr. Salazar was permitted
only to show the activities and conduct of Kathy in
relation to Santa Clara County Department of Social
Services and was only to be used for the limited purpose
of determining the credibility or believability of
Kathy.

Thus, we conclude that the trial court sufficiently
articulated its reasons for admitting Kathy and Jeremy's
evidence under section 352, and properly permitted their
evidence to be presented and argued to the jury.

Opinion at 13-14.

Because the state court's balancing test was not contrary to

but consistent with federal law, the Court finds that Petitioner's

claim for habeas relief on this basis is unwarranted.

21

Therefore, Petitioner's claim of a due process violation is DENIED.

### b.   Confrontation Clause Violation

Petitioner asserts that Kathy's testimony should not have been admitted because he was not permitted to cross-examine her regarding her commission of welfare fraud, in violation of his right to confront witnesses under the Confrontation Clause of the Sixth Amendment.  He also claims the stipulation that Kathy believed she had committed welfare fraud while living with appellant did not adequately protect his rights.

Although the opportunity of cross-examination is central to a defendant's rights under the Confrontation Clause, the right is not limitless.  The United States Supreme Court, in <u>Delaware v. Van Arsdall</u>, 475 U.S. 673 (1986), ruled that while a trial court may not prevent a defendant from cross-examining the prosecution's witnesses, it may place limits based on the need for fairness and order in the proceedings.  The Court stated:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing limits on defense counsel's inquiry into potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

<u>Van Arsdall</u>, 475 U.S. at 679 (quoting <u>Delaware v. Fenester</u>, 474 U.S. 15, 20 (1985).

22

To prevail in this habeas challenge, Petitioner would have to demonstrate that the appellate court's rejection of his claim of a Confrontation Clause violation was based on an erroneous interpretation of this law or was an unreasonable application of the law to the facts in his case.  See 28 U.S.C. § 2254(d).  He has not done so.

The appellate court held that the trial court did not abuse its discretion in allowing Kathy to testify in the face of her assertion of her Fifth Amendment privilege, and that even if the trial court erred in preventing Petitioner from pursuing this line of questioning, it was harmless.  Opinion at 15.  The court stated, "The most that appellant could have done on cross-examination was establish that Kathy had made false statements on some of her applications for welfare.  The stipulation and appellant's witness, Mr. Salazar, established this fact."  Id.

The United States Supreme Court in Van Arsdall stated that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman[6] harmless-error analysis.  The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."  Van Arsdall, 475 U.S. at 684 (footnote added).  The appellate court was not unreasonable in finding that it could say just that.  As the appellate court pointed out, the stipulation and Petitioner's witness, Mr. Salazar, were sufficient to establish

---

[6] Chapman v. California, 386 U.S. 18, 21,(1967).

23

United States District Court
For the Northern District of California

that Kathy had made false statements on some of her applications for welfare.  Any further impeachment of Kathy along the lines that the defense attempted to pursue would have added little.

The appellate court was not unreasonable in holding that Petitioner was not denied his constitutional right to confront witnesses when the trial court refused him permission to cross-examine Kathy concerning her commission of welfare fraud, or that even if he was denied this right, any error was harmless under Van Arsdall.  See 28 U.S.C. § 2254(d).  Accordingly, Petitioner's claim of a confrontation clause violation fails, and his claim for habeas relief on this basis is DENIED.

B.    ERRONEOUS JURY INSTRUCTIONS

1.    Background

Petitioner argues that his due process rights were violated by the trial court's reading of (a) CALJIC Nos. 2.50.01 and 2.50.02 because they were misleading to the jury and (b) CALJIC No. 17.41.1 because it interfered with the jury's secrecy and independent deliberations.

2.    Applicable Federal Law

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle, 502 U.S. at 71-72.  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  See id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643

24

**United States District Court**
For the Northern District of California

(1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.") (quoting <u>Cupp</u>, 414 U.S. at 146). The instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. <u>See</u> <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Cupp</u>, 414 U.S. at 147). In other words, the district court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire process. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 169 (1982) (citing <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the United States Constitution. <u>Estelle</u>, 502 U.S. at 72 & n.4; <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).

A determination that there is a reasonable likelihood that the jury has applied the challenged instructions in a way that violates the Constitution establishes only that a constitutional error has occurred. <u>Calderon v. Coleman</u>, 525 U.S. 141, 146 (1998). If constitutional error is found, the Court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. <u>Id.</u> (citing <u>Brecht</u>, 507 U.S. at 637).

**United States District Court**
For the Northern District of California

3.   Analysis

a.   CALJIC Nos. 2.50.01 and 2.50.02

Petitioner argues that the trial court's reading of the July, 2000 revised versions of CALJIC Nos. 2.50.01 and 2.50.02 deprived him of his due process rights because these instructions "unconstitutionally permitted the jury to find him guilty of the charged offenses based on a preponderance of the evidence burden of proof."  Furthermore, Petitioner argues that the instructions constituted error not amenable to harmless error analysis.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  This principle prohibits the use of evidentiary presumptions in a jury charge that relieve the State of its burden of proof beyond a reasonable doubt.  See Yates v. Evatt, 500 U.S. 391, 400-03 (1991).  The State may adopt a rule that makes it easier for it to meet the requirement of proof beyond a reasonable doubt, so long as the rule does not shift or reduce the burden of proof or otherwise violate a principle of fairness contained in the Due Process Clause.  See Montana v. Egelhoff, 518 U.S. 37, 54-55 (1996) (due process not violated by a rule excluding intoxication as evidence to refute mens rea even though the rule made it easier for the State to prove mens rea beyond a reasonable doubt).

The trial court read the following July, 2000 revised version of CALJIC No. 2.50.01 to the jury:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this

26

disposition, you may, but are not required to, infer
that [he] was likely to commit and did commit the
[crimes] for which [he] is accused in Counts 1 and 3.
[¶]  However, if you find by a preponderance of the
evidence that the defendant committed prior sexual
offense[s], that is not sufficient by itself to prove
beyond a reasonable doubt that [he] committed the
crime[s] charged in Counts 1 and 3.  The weight and
significance of the evidence, if any, are for you to
decide.  [¶]  [Y]ou must not consider this evidence for
any other purpose.]

CT 291 (brackets in original).

The trial court also read to the jury the July, 2000 revised

version of CALJIC No. 2.50.02, which referred to Count 2 and

contained the same language as CALJIC No. 2.50.01, except "domestic

violence" was substituted for "sexual offenses."  CT 293.

The appellate court correctly recognized that it must view the

challenged instructions in light of the record as a whole to

determine whether there was a reasonable likelihood that the jury

applied the challenged instruction in a way that allowed a

conviction on a lesser standard than beyond a reasonable doubt.

The court concluded that "CALJIC Nos. 2.50.01 and 2.50.02, when

read along with the rest of the jury instructions regarding

standard of proof, was not misleading or likely to be misconstrued

in the manner appellant describes."  Opinion at 16.  The court

explained:

In determining the propriety of an instruction, we
consider the challenged language in light of the court's
entire charge to the jury as well as argument by counsel
and ask whether there is "a reasonable likelihood" the
jury understood the instructions as appellant asserts.
(Estelle v. McGuire (1991) 502 U.S. 62, 72 and fn. 4;
People v. Cain (1995) 10 Cal.4th 1, 36.)  Appellant's
jury was instructed that it should read all of the
instructions as a whole and each in light of all other
instructions.  (CALJIC No. 1.01.)  The jury was also
instructed that appellant was presumed innocent and the
prosecution had the burden of proving him guilty beyond

27

United States District Court
For the Northern District of California

a reasonable doubt.  (CALJIC No. 2.90.)  Reading the
instructions as a whole, it is not reasonably likely
that the jury would have been misled into believing it
could dispense with these instructions and leap from a
finding that appellant committed the prior sexual
offenses and acts of domestic violence by a standard
higher than a preponderance to the conclusion that he
had committed the same offenses against Christina.  To
so interpret the language appellant attacks would be to
ignore the clear meaning of the other instructions
given, as well as the specific admonition in CALJIC Nos.
2.50.01 and 2.50.02 that prior sexual offenses and acts
of domestic violence were insufficient alone to prove
beyond a reasonable doubt that appellant committed the
charged offenses.  We presume that the jury followed the
instructions given, not that it ignored them.  (See,
e.g., People v. Horton (1995) 11 Cal.4th 1068, 1121.)
We conclude that CALJIC Nos. 2.50.01 and 2.50.02 as
given did not result in appellant being convicted of the
current charges based solely on the prior sexual
offenses and domestic violence incidents to which Kathy
testified.

Opinion at 17.

The appellate court's decision was not contrary to, or an

unreasonable application of, clearly established federal law.  See

28 U.S.C. § 2254(d)(1).  The United States Supreme Court has made

clear that "instructions that might be ambiguous in the abstract

can be cured when read in conjunction with other instructions" and

the trial record.  United States v. Jones, 527 U.S. 373, 391

(1991).

Petitioner argues that the instructions used at his trial were

like those determined to be constitutionally infirm in Gibson v.

Ortiz, 387 F.3d 812 (9th Cir. 2004).  In Gibson, the State

introduced evidence of the defendant's brutal, uncharged acts of

sexual assault and domestic violence to help prove charges of rape

and child molestation.  Id. at 817.  The jury was instructed with

the 1996 version of CALJIC No. 2.50.01, which did not caution the

jury that the inference it could draw from the prior offense was

not enough to prove guilt of the charged crime beyond a reasonable doubt. <u>Id.</u> at 817-18. The problem was compounded by the use of a modified version of CALJIC No. 2.50.1, which used the preponderance of the evidence standard as the burden of proof for prior sexual offenses. <u>Id.</u> at 822. The "interplay of the two instructions allowed the jury to find that [the defendant] committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the <u>charged</u> acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." <u>Id.</u> (emphasis in original). The <u>Gibson</u> instructions, carefully followed by the jury, would allow conviction based on a finding of the preponderance of the evidence. <u>See</u> <u>id.</u>

The instructions read at Petitioner's trial were not the same as the those used in <u>Gibson</u> and did not permit a conviction upon less that proof beyond a reasonable doubt. The jury was instructed with the July, 2000 revised versions of CALJIC Nos. 2.50.01 and 2.50.02, which added these paragraphs:

> However, if you find by a preponderance of the evidence that the defendant committed prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he] committed the crime[s] charged in Counts 1 and 3. The weight and significance of the evidence, if any, are for you to decide. [¶] [Y]ou must not consider this evidence for any other purpose.]

CT 291, 293 (brackets in original). Given the trial court's explicit warning against confusing the lesser standard of proof for prior misconduct with the required higher standard of proof for the charged crime, the state court reasonably found no likelihood that the jury applied the challenged instructions to convict Petitioner

based on a preponderance of evidence or any standard below proof beyond a reasonable doubt.

Because the appellate court's rejection of Petitioner's challenge to CALJIC Nos. 2.50.01 and 2.50.02 was not contrary to or an unreasonable application of clearly established federal law, this claim is DENIED.

b.   CALJIC No. 17.41.1

Petitioner argues that the use of CALJIC No. 17.41.1 denied the jury its nullification power and violated his due process rights because it interfered with the jury's secrecy and independent deliberations.

Petitioner's jury was instructed pursuant to the January, 1998 version of CALJIC No. 17.41.1 as follows:

> The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by these instructions.  Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

CT 357 (brackets in original).

On direct appeal, Petitioner claimed that the trial court committed reversible error when it instructed the jurors with CALJIC No. 17.41.1.  He alleged that the instruction violated various federal and state constitutional provisions by infringing on the free speech rights of the jurors and undermining their discretion to disagree and nullify.  The California Court of Appeal denied Petitioner's claim, stating:

> The California Supreme Court has recently determined that CALJIC No. 17.41.1 "does not infringe upon defendant's federal or state constitutional right to

trial by jury or his state constitutional right to a
unanimous verdict . . . ."  (People v. Engelman (2002)
__Cal.4th__,__ [written opn., p. 1] (hereafter
Engelman).)  The court was not persuaded that, "merely
because CALJIC No. 17.41.1 might induce a juror who
believes there has been juror misconduct to reveal the
content of deliberations unnecessarily (or threaten to
do so), the giving of the instruction constitutes a
violation of the constitutional right to trial by jury
or otherwise constitutes error under state law."
(Engelman, supra, __Cal.4th at [p. 7].)

The court explained:  "[A]lthough the secrecy of
deliberations is an important element of our jury
systems, defendant has not provided any authority, nor
have we found any, suggesting that the federal
constitutional right to trial by jury (or parallel
provisions of the California Constitution, or other
state law) requires absolute and impenetrable secrecy
for jury deliberations in the face of an allegation of
juror misconduct, or that the constitutional right
constitutes an absolute bar to jury instructions that
might induce jurors to reveal some element of their
deliberations."  (Engelman, supra, __Cal.4th at [pp. 6-
7].)  The same can be said of defendant's claims in
terms of federal and state constitutional rights to due
process.

The court in Engelman found that "[t]he instructions as
a whole fully informed the jury of its duty to reach a
unanimous verdict based upon the independent and
impartial decision of each juror.  (CALJIC No. 17.40
['The People and the defendant are entitled to the
individual opinion of each juror.  [¶]  Each of you must
decide the case for yourself. . . .']; CALJIC No. 17.50
[instructing that in order to reach a verdict, 'all
twelve jurors must agree to the decision'].)"
(Engelman, supra, __Cal.4th at [pp. 7-8].)  As the court
in Engelman noted, CALJIC No. 17.41.1 does "not contain
language suggesting that jurors who find themselves in
the minority, as deliberations progress, should join the
majority without reaching an independent judgment." (Id.
at [p. 8].)

The instruction in this case likewise conveyed the
necessity for each juror to exercise his or her
impartial, independent judgement.  We reject the
argument that CALJIC No. 17.41.1 undermines the
independence of individual jurors because it might be
used to coerce "hold-out" jurors.

As to the argument that CALJIC No. 17.41.1 infringes
upon defendant's constitutional right to jury
nullification, it is without merit in light of People v.

31

United States District Court
For the Northern District of California

> <u>Williams</u> (2001) 25 Cal.4th 441, 449-463 (<u>Williams</u>).  The
> court in <u>Williams</u> declared:  "Jury nullification is
> contrary to our ideal of equal justice for all and
> permits both the prosecution's case and the defendant's
> fate to depend upon the whims of a particular jury,
> rather than upon the equal application of settled rules
> of law . . . ."  (<u>Id.</u> at p. 463.)  The court explained
> that although the possibility of jury nullification
> exists because of certain procedural aspects of our
> criminal justice system, a defendant does not have a
> constitutional right to that possibility.  (<u>Id.</u> at 449-
> 51.)
>
> . . . .
>
> We have no reason to believe that CALJIC No. 17.41.1
> improperly impacted the jurors' deliberations in this
> case.  There was no jury deadlock, there were no holdout
> jurors, and there was no report to the court of any
> juror refusing to follow the law.  In fact the jury
> deliberated for less than seven hours.  Thus, any error
> in instructing the jury with CALJIC No. 17.41.1 would
> not require reversal, regardless of the harmless error
> standard employed.

Opinion at 18-21 (footnotes omitted).

In <u>Brewer v. Hall</u>, 378 F.3d 952 (9th Cir.) <u>cert. denied</u>, 543

U.S. 1037 (2004), the Ninth Circuit rejected a state habeas

petitioner's constitutional challenge to CALJIC No. 17.41.1,

holding:  "It is clear . . . that the California appellate court's

holding was not contrary to or an unreasonable application of

clearly established Supreme Court precedent, because no Supreme

Court case establishes that an instruction such as CALJIC No.

17.41.1 violates an existing constitutional right."  <u>Id.</u> at 955-56.

Here, as in <u>Brewer</u>, Petitioner has pointed to no Supreme Court

precedent clearly establishing that CALJIC No. 17.41.1 -- either on

its face or as applied to the facts of his case -- violated his

constitutional rights.  <u>See id.</u> at 957.

Because the appellate court's rejection of Petitioner's claim

was not contrary to or an unreasonable application of clearly

32

established Supreme Court precedent, this claim for habeas corpus relief is DENIED.

II.   CLAIMS DENIED SUMMARILY BY STATE COURT

    A.   INSUFFICIENCY OF EVIDENCE

        1.   Background

Petitioner alleges that the evidence introduced to prove he raped and sodomized the victim was legally insufficient because it was based on the victim's withdrawn testimony, perjury and another witness's irrelevant testimony.

Petitioner did not raise this claim on appeal, and the state supreme court denied the claim on habeas review without citation or comment.  Because there is no reasoned state court opinion which discusses the claim, the Court conducts an independent review of the record to determine whether the California Supreme Court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

        2.   Applicable Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief.  See Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).

United States District Court
For the Northern District of California

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992), <u>cert. denied</u>, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>See id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. <u>See Jackson</u>, 443 U.S. at 324; <u>Payne</u>, 982 F.2d at 338; <u>Miller v. Stagner</u>, 757 F.2d 988, 992-93 (9th Cir.), <u>amended</u>, 768 F.2d 1090 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1048, <u>and cert. denied</u>, 475 U.S. 1049 (1986); <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir.), <u>cert. denied</u>, 469 U.S. 838 (1984).[7]

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326. A jury's credibility

---

[7] The Ninth Circuit has left open the question whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. <u>See Chein v. Shumsky</u>, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc); <u>Bruce v. Terhune</u>, 376 F.3d 950, 956-57 (9th Cir. 2004). However, five other circuits have concluded that a sufficiency of the evidence claim presents a legal determination that must be evaluated through the AEDPA standard of review embodied in § 2254(d)(1), and no circuit has explicitly held that a state court's <u>Jackson</u> inquiry is exempt from AEDPA's standard of review. <u>Id.</u> at 958-59 (O'Scannlain, J., concurring specially).

determinations are therefore entitled to near-total deference.  <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, <u>Jackson</u> does not permit a federal habeas court to revisit credibility determinations.  <u>See</u> <u>id.</u> at 952 (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrong-doing not a basis for revisiting jury's obvious credibility determination); <u>see also</u> <u>People of the Territory of Guam v. McGravey</u>, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

The prosecution need not affirmatively rule out every hypothesis except that of guilt.  <u>Wright v. West</u>, 505 U.S. 277, 296-97 (1992) (quoting <u>Jackson</u>, 443 U.S. at 326).  The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence therefore is not sufficient to invalidate an otherwise legitimate conviction.  <u>See</u> <u>Taylor v. Stainer</u>, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut unsupported by evidence and therefore insufficient to invalidate conviction).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995).  Mere suspicion and speculation, however, cannot support logical inferences.  <u>Id.</u>

3.   Analysis

In order to prove Petitioner's guilt as to the crime of rape under California Penal Code § 261(a)(2), each of the following elements must have been proved according to the January, 1997 version

United States District Court
For the Northern District of California

of CALJIC No. 10.00, Rape -- Spouse and Non-Spouse -- Force or
Threats, which was read to the jury as follows:  "(1) A male and
female engaged in an act of sexual intercourse; (2) The two persons
were [not] married to each other at the time of the act of sexual
intercourse; (3) The act of intercourse was against the will of the
alleged victim; [and] (4) The act was accomplished by means of force,
violence, duress, menace, or fear of immediate and unlawful bodily
injury [to the alleged victim]."  CT 311 (brackets in original).

In order to prove his guilt as to the crime of forcible sodomy
under California Penal Code § 286(c)(2), each of the following
elements must have been proved according to the July, 1999 revised
version of CALJIC No. 10.20, Unlawful Sodomy by Force or Threats,
which was read to the jury as follows:  "(1) A person participated in
an act of sodomy with an alleged victim; [and] [(2) The act was
accomplished against the alleged victim's will by means of force,
violence, duress, menace, or fear of immediate and unlawful bodily
injury on [the alleged victim.]"  CT 315 (brackets in original).

The evidence adduced at trial with respect to the rape and
sodomy charges is summarized above.  See supra Statement of Facts,
Discussion Part I.A.1.

Viewing the evidence in the light most favorable to the
prosecution, and resolving any conflicting inferences in favor of the
prosecution, the Court finds that a rational trier of fact could have
found the essential elements of the crimes beyond a reasonable doubt.
Payne, 982 F.2d at 338.  That is, a rational juror could have found
that Petitioner was guilty of the rape and sodomy charges even though
the victim claimed the sexual acts were consensual based upon:

Petitioner's incriminating statements during the pretext phone call; testimony from the officers and the SART nurse who observed Christina's demeanor and injuries shortly after the incident; and Petitioner's prior similar bad acts.

The state court's rejection of Petitioner's insufficiency of the evidence claim was not objectively unreasonable.  See Himes, 336 F.3d at 853.  Accordingly, this claim for habeas corpus relief is DENIED.

B.    PROSECUTORIAL MISCONDUCT

1.    Background

Petitioner claims that the prosecutor committed misconduct by failing to disclose allegedly exculpatory information to the defense.  Specifically, Petitioner claims that the prosecutor failed to disclose material evidence about Kathy committing welfare fraud.

Petitioner did not raise his prosecutorial misconduct claim on direct appeal, and the state supreme court denied the claim on habeas review without citation or comment.  Because there is no reasoned state court opinion which discusses the claim, this Court conducts an independent review of the record to determine whether the state court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes,  336 F.3d at 853.

2.    Applicable Federal Law

Prosecutorial misconduct is a cognizable claim in federal habeas corpus review.  The appropriate standard of review is the narrow one of due process and not the broad one of exercise of supervisory power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).

A defendant's due process rights are violated when a

prosecutor's misconduct renders a trial "fundamentally unfair."  <u>See</u> <u>id.</u>; <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor").

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 87.

A defendant cannot claim a <u>Brady</u> violation if he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence." <u>United States v. Shaffer</u>, 789 F.2d 682, 690 (9th Cir. 1986) (citing <u>United States v. Brown</u>, 582 F.2d 197, 200 (2d Cir.), <u>cert. denied</u>, 439 U.S. 915 (1978)); <u>see, e.g.</u>, <u>United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995) (where government discloses all information necessary for defense to discover alleged <u>Brady</u> material on its own, government is not guilty of suppressing evidence).

       3.   Analysis

Petitioner has not shown that the prosecutor failed to provide him with exculpatory material evidence in violation of <u>Brady</u>.  The record shows that Petitioner was fully aware of the facts surrounding Kathy's fraudulent welfare applications.  The prosecutor submitted the following stipulation:  "(1) Kathy and the defendant are currently involved in a child custody case, (2) Kathy expected that the defendant would bring up a possible Welfare violation,

**United States District Court**
For the Northern District of California

(3) Kathy believes that she may have violated Welfare Fraud laws while living with the defendant." CT 222. At trial, the defense called Mr. Salazar to testify about the welfare applications submitted by Kathy. Thus, the Court finds no merit in Petitioner's claim of prosecutorial misconduct relating to any alleged failure to disclose material evidence about Kathy committing welfare fraud.

The Court notes that Petitioner's six-page prosecutorial misconduct claim also includes another allegation dealing with the prosecutor's failure to disclose allegedly exculpatory evidence relating to Christina. Petitioner states,

> The prosecutor, having discovered the evidence, specifically the forced testimony of his "star" victim/witness (Ms. Doe), a testimony whereupon he made "verbal threats" to subject or cause to be subjected to imprisonment [i]f she did not physically appear before the court to aid in the prosecution of a person that the prosecutor knew well in advance would be exonerated of committing acts of rape, based on his victim/witness repeated refusal to agree to testify to such. . . .

Second Am. Pet., Prosecutorial Misconduct at 6. These assertions are too vague to establish a constitutional violation and may be denied on that ground alone.

A petitioner must state his claims with sufficient specificity. See Hendricks v. Vasquez, 908 F.2d 490, 491-92 (9th Cir. 1990); Wacht v. Cardwell, 604 F.2d 1245, 1246-47 (9th Cir. 1979). It is well-settled that "'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)). Here, Petitioner's claim relating to Christina's "forced testimony" is no more than a conclusory assertion lacking any factual detail or reference to the

record or any other document.  Even when viewed in their most likely context, his allegations do not support a claim for prosecutorial misconduct.  Accordingly, his claim for relief on this basis is denied.  See id. (affirming district court's denial of Brady claims which did not meet specificity requirements on habeas review).

Therefore, the state court's denial of Petitioner's prosecutorial misconduct claim was objectively reasonable.  See Himes, 336 F.3d at 853.  Accordingly, Petitioner's claim for habeas relief on this ground is DENIED.

C.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

1.   Background

Petitioner raises a claim of ineffective assistance of trial counsel because of the defense strategy counsel pursued at trial, specifically, failing to raise the affirmative defense of consent and to argue that Petitioner was innocent.

Petitioner raised his ineffective assistance of counsel claim for the first time on state habeas corpus review, where it was denied summarily without citation or comment.  Accordingly, the Court reviews this claim under the standard set forth in Himes, 336 F.3d at 853.

2.   Applicable Federal Law

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

United States District Court
For the Northern District of California

process that the trial cannot be relied upon as having produced a just result.  Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

The Strickland framework for analyzing ineffective assistance of counsel claims is "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams, 529 U.S. at 404-08.

A difference of opinion as to trial tactics does not constitute denial of effective assistance, see United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), cert. denied, 454 U.S. 1127 (1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available.  See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances.  See

41

United States District Court
For the Northern District of California

Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  The

investigation itself must be reasonable for an attorney's tactical

decision based on that investigation to be reasonable.  Wiggins v.

Smith, 539 U.S. 510, 523-24 (2003).  A court must consider not only

the quantum of evidence known to counsel, but also whether the known

evidence would lead a reasonable attorney to investigate further.

Id. at 526-27.  Evidence that the challenged trial conduct resulted

from inattention rather than from strategic considerations may also

be relevant to the inquiry.  Id. at 524-25.  See, e.g., McDowell v.

Calderon, 107 F.3d 1351, 1358 (9th Cir.) (no ineffective assistance

where counsel's decision to concede guilt of felony murder but

contest defendant's intent to kill "best choice from a poor lot"),

amended, 116 F.3d 364 (9th Cir.), vacated in part by 130 F.3d 833,

835 (9th Cir. 1997) (en banc).

        3.  Analysis

    A court need not address the question of counsel's deficient

performance if it finds that the petitioner was not prejudiced

thereby.  See Strickland, 466 U.S. at 697.  Here, Petitioner has not

shown that as a result of any of his trial counsel's actions there

is "a reasonable probability that . . . the result of the proceeding

would have been different."  Id. at 694.  The tactical decisions of

his trial counsel deserve deference because the record shows that

reasonable decisions were made as part of his defense strategy.  See

Sanders, 21 F.3d at 1456.  Even if Petitioner disagrees with his

trial counsel's decisions, a difference of opinion as to trial

tactics does not constitute denial of effective assistance.  See

Mayo, 646 F.2d at 375.  His counsel's decisions were informed,

strategic choices which should be given deference, and the Court
finds that the state court's rejection of Petitioner's ineffective
assistance of counsel claim was not an unreasonable application of
Strickland.   See Himes, 336 F.3d at 853.   Accordingly, this claim
for relief is DENIED.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas
corpus is DENIED as to all claims.   The Clerk of the Court shall
terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

DATED: 2/2/07

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

GARIBAY,

          Plaintiff,

  v.

LEWIS,

          Defendant.

_____/

Case Number: CV03-01808 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 2, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Pamela K. Critchfield
Frances Marie Dogan
State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco,  CA 94102-7004

Raul A. Garibay
P98953
Pleasant Valley State Prison
P.O. Box 8503
Coalinga,  CA 93210

Dated: 2/2/07

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California

44